UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY BEIER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.,<br><br>    Defendants. | Case No. 18-cv-06632-JD<br><br>**ORDER RE MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 42, 43 |

This is an action brought by airline mechanics against their union and their employer airline. Defendants' motions to dismiss plaintiffs' first amended complaint are dismissed in part and granted in part, with leave to amend. Dkt. Nos. 42, 43.

## BACKGROUND

Plaintiffs Harry Beier, John Scholz, Kevin Bybee and Sally Dill are United Airlines ("UAL") mechanics and Teamster union members. Dkt. No. 37 (First Amended Complaint or "FAC") ¶¶ 9-14. The amended complaint challenges the way their retirement benefit options were handled by the Teamsters and United Airlines in connection with the airline's bankruptcy proceedings in 2002, and subsequent merger with Continental Airlines.

Central to the lawsuit is Letter of Agreement 05-03M ("LOA 05-03M"), which was negotiated by plaintiffs' former union, the Aircraft Mechanics Fraternal Association ("AMFA"), and United Airlines ("UAL"), as part of the exit from bankruptcy. *Id*. ¶¶ 24-25. The bankruptcy had caused the defined benefit pension plans for UAL's employee groups to be terminated, and wages to be dramatically reduced. *Id*. ¶ 29. The defined benefit pension plan for UAL mechanics was replaced by a "defined contribution plan, commonly known as a 401k." *Id*. ¶ 24. LOA 05-03M, which was executed in May 2005 and ratified in January 2006, memorialized the union and

airlines' agreement about this and other changes to the UAL mechanics' benefits and pay arising out of the bankruptcy. *Id*. ¶ 30.

LOA 05-03M provided that in the event United Airlines "'maintains or establishes a defined benefit plan for any UAL or company employee group, the Company must allow UAL Mechanics, represented by AMFA or by any then existing union representation, the option of voting' on whether to swap the replacement defined contribution plan for a defined benefit plan or, at a minimum, to stay in the defined contribution plan, albeit with better terms." FAC ¶ 27; *see also id*. ¶ 33 ("LOA 05-03M, Section 5, Paragraph D specifically provides in pertinent part, '[f]ollowing the Plan Termination Date, the Company shall not maintain or establish any single-employer defined benefit plan for any UAL or Company employee group unless AMFA-represented employees are provided the option of electing to receive a comparable defined benefit plan in lieu of the Replacement Plan Contribution.'").

In 2008, the International Brotherhood of Teamsters ("IBT") was elected as the new UAL mechanics' certified representative, in place of AMFA. *Id*. ¶ 31. In May 2010, United Airlines merged with Continental Airlines, creating United Continental Holdings ("UCH") as the parent company of the newly merged entity. *Id*. ¶ 42. UAL/UCH subsequently "assumed responsibility for Continental's pension, Continental Airlines Retirement Plan ('CARP') . . . beginning October 1, 2010." *Id*. ¶ 44. The CARP is alleged to be a "single-employer defined benefit pension plan" that was available to the former Continental Airlines mechanics. *Id*. ¶ 51.

In December 2011, the UAL mechanics entered into a new collective bargaining agreement ("CBA") negotiated by IBT and UAL, but "[c]ontrary to the provisions of LOA 05-03M, plaintiffs were not accorded the required vote to elect CARP either prior to, during, or after the ratification in late December 2011 of the 2010-2013 CBA." *Id*. ¶ 53. Under the subsequently-adopted 2016-2022 CBA, "there would be no stand-alone vote for the UAL Mechanics regarding pension options -- all mechanics would be enrolled in CARP with a start date of January 1, 2017." *Id*. ¶ 63. Among other claims, plaintiffs assert that they "should have been participants in CARP" since October 1, 2010, and not January 1, 2017. *Id*. ¶ 10.

In the fall of 2016, before the 2016-2022 CBA was ratified, plaintiffs Beier, Scholz and Bybee all filed separate grievances with IBT about the company's "violations of the CBA, specifically, LOA 05-03M." FAC ¶¶ 67, 94, 103, 128, 155. The three grievances were "consolidated . . . into one grievance." *Id*. ¶¶ 108, 163. In January 2017, plaintiff Scholz was advised that IBT attorney, Edward Gleason, had been asked to "evaluate the LOA 05-03M grievances." *Id*. ¶ 138. In March 2017, plaintiff Beier "was shown a written document authored by IBT attorney Edward Gleason ('Gleason'), and plaintiff Beier learned, for the first time, IBT had decided to withdraw his grievance and dismiss it with prejudice" because "the grievance had no merit." *Id*. ¶ 109. Plaintiffs Scholz and Bybee were similarly advised. *Id*. ¶¶ 140, 165. In August 2017, plaintiff Scholz received a letter denying his request to proceed by way of individual arbitration without the union. *Id*. ¶ 115. In May 2018, plaintiff Bybee received a letter from a managing director of UAL informing him that "the Company considers this matter closed for all of the grievances." *Id*. ¶ 118. Plaintiff Dill filed a grievance in November 2016, which remains "open." *Id*. ¶¶ 173-78.

This suit was filed on October 31, 2018. Dkt. No. 1. The FAC names as defendants (1) the International Brotherhood of Teamsters; (2) James Hoffa, President and Representative, and "an officer of IBT"; (3) Teamsters SFO Local 856/986 ("SFO Local"), a "chartered local union" and "agents" of IBT; (4) Peter Finn, Secretary-Treasurer and Principal Officer of SFO Local; (5) UAL; and (6) UCH. FAC ¶¶ 15-22. Six legal claims are asserted against these six defendants.

## DISCUSSION

### I. DISMISSAL OF PLAINTIFF BEIER

After the FAC was filed, former counsel for plaintiff Beier advised the Court that Beier suffered a serious medical event that resulted in his daughter, Frances Beier, being appointed as his conservator. Dkt. Nos. 48, 62, 64. The Court has allowed Frances Beier's counsel to take the place of Harry Beier's former counsel in this case. Dkt. No. 72.

The conservator has requested on behalf of Beier that he be dismissed from this case without prejudice. Dkt. No. 70. Beier's conservator may speak on his behalf pursuant to Federal

3

1    Rule of Civil Procedure 17(c)(1)(C), and the dismissal request is granted. All allegations relating
2    to Beier should be removed from any further amended complaint.

## II. COUNTS I & II: BREACH OF CONTRACT AND BREACH OF DUTY OF FAIR REPRESENTATION CLAIMS

Plaintiffs allege that UAL and UCH breached the collective bargaining agreement, and the union breached its duty of fair representation ("DFR"). This kind of suit, which brings claims against both the employer and the union, is known as a "'hybrid' suit." *Beckington v. American Airlines, Inc.*, 926 F.3d 595, 606 (9th Cir. 2019). In such a suit, the Court "first examine[s] the claim against the union." *Bautista v. Pan American World Airlines, Inc.*, 828 F.2d 546, 551-52 (9th Cir. 1987).

"A union breaches its duty of fair representation when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 879 (9th Cir. 2007). Conduct is "arbitrary" when it is "irrational, . . . without a rational basis or explanation." *Id*. A union's exercise of judgment is "discriminatory" when there is "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Id*. at 880. "To establish that the union's exercise of judgment was in bad faith, the plaintiff must show 'substantial evidence of fraud, deceitful action or dishonest conduct.'" *Id*.

Plaintiffs have plausibly alleged that IBT breached its duty of fair representation in abandoning the UAL mechanics' rights under LOA 05-03M and in the way IBT handled the negotiations of the 2016-2022 CBA. Plaintiffs allege, for example, that IBT represented both the Continental mechanics and the UAL mechanics, and IBT, "in public statements and official releases[,] stated they had essentially foisted the Continental CBA onto the UAL Mechanics, reasoning the two work groups would soon be combined and having more similar CBAs would make the process that much easier." FAC ¶ 52. The "[n]egotiations to integrate" are also alleged to have been "completely in secret" with "[a]ny and all Union negotiations surrounding LOA 05-03M . . . shrouded in total secrecy and [] never communicated in any coherent or comprehensive manner to the membership." *Id*. ¶ 59. Moreover, "[a]round August of 2016, the UAL Mechanics

4

had learned the Union had repeatedly rejected overtures and proposals by the Company to enroll the UAL Mechanics into CARP because the Union wanted the UAL mechanics in the Union controlled multi-employer Western Teamsters Conference Pension Trust ('WCTPT')." *Id*. ¶ 92. IBT is alleged to have intentionally avoided enforcing LOA 05-03M "in order to self-deal in the hopes of receiving millions of dollars of plan contributions made by the Company on behalf of the UAL Mechanics." *Id*. ¶ 189; *see also* ¶ 196 ("The Union had a singular goal -- put UAL mechanics in WCTPT because the Union would immediately, specifically, and enormously profit from such enrollment."). These allegations are taken as true at this stage of the case, and they plausibly allege a DFR claim against the union. Contrary to the union defendants' argument, these allegations are not "subsumed in the claim that the IBT unfairly refused to take [plaintiffs'] grievances to arbitration." Dkt. No. 43 at 9.

Plaintiffs' allegations about their grievances and the way they were handled are a different matter, and their complaints about deficiencies in the grievance process do not plausibly state a DFR claim. That is primarily because of the Gleason memo, which is incorporated by reference into the FAC and can be found in full at Docket Number 42-1. The 20-page memo, which is dated March 28, 2017, lays out in detail an IBT attorney's analysis for why plaintiffs' grievance is "untimely by several years"; the LOA 05-03M "obligations attach only to pre-Merger United"; even if the obligations attach post-merger, "the conditions giving rise to those obligations were not triggered" because CARP "is a 'multiple-employer defined benefit pension plan,' not a single-employer defined benefit pension plan"; and in any event, "an arbitrator likely would conclude that new United satisfied its obligations under LOA 17 when it made the CARP available to the United mechanics effective on January 1, 2017 through its October 2015 close-out proposal, or when it agreed to make the CARP available to them effective January 1, 2017 in the now ratified JCBA." Dkt. No. 42-1 at 19. On its face, the memo makes the grievance DFR claims implausible as a pleading matter because it indicates that the union's denial of plaintiffs' grievances and refusal to take them to arbitration was "intentional conduct by a union exercising its judgment." *Beck*, 506 F.3d at 879. "[S]o long as a union exercises its judgment, no matter how mistakenly, it

will not be deemed to be wholly irrational" and thus arbitrary. *Id*. Plaintiffs' allegations and the incorporated document show that conclusion applies here.

Plaintiffs' complaints about other procedural deficiencies in the grievance process, *e.g.*, the failure to hold a hearing or to strictly comply with the timelines set out in the CBA, point only to "failure[s] to perform a ministerial or procedural act" which did not "substantially injure[] the union member." *Id*. at 880. That is because it was not any of those actions or omissions that "completely extinguishe[d] the employee's [grievance] right[s]." *Id*. Rather, plaintiffs' grievance rights were extinguished when the union exercised its reasoned judgment to terminate their grievance, based on the Gleason memo. Consequently, those portions of plaintiffs' DFR claim that rely on the grievance process are dismissed.[1]

Because the LOA 05-03M portion of plaintiffs' DFR claim survives, the Court will consider plaintiffs' breach of CBA claim against the airline. It is dismissed. Claims which seek "purely to vindicate a right or duty created by the CBA itself" and which "require construing the collective bargaining agreement," are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920-21 (9th Cir. 2018). That is the case for plaintiffs' breach of contract claim. *See* FAC ¶ 217 ("Plaintiffs assert herein a claim against UAL and UCH for breach of contract with regards to the collective bargaining agreement entered into with the UAL Mechanics Class."); ¶ 224 ("UAL and UCH breached the CBA when they . . . failed to enforce the contractual obligations of LOA 05-03M").

Grounds for an exception to RLA preemption in a hybrid suit have not been established here. Plaintiffs have alleged only in the most conclusory of ways that "their employer and their union 'acted in concert to discriminate against them, such that arbitration before a panel of employer and union representatives would be absolutely futile.'" *Beckington*, 926 F.3d at 606-07. Without non-conclusory allegations to that effect, no exception applies, and the breach of contract claim against the airline is preempted. Plaintiffs have not identified any other valid exception to

---

[1] The Court declines to consider defendants' statute of limitations arguments for these allegations, which are rarely appropriate for resolution at the motion to dismiss stage and which in any event need not be reached based on the dismissal on other independent grounds.

6

1    RLA preemption that is applicable here.  The breach of contract claim against UAL and UCH is
2    consequently dismissed.

### III.  COUNT III: VIOLATION OF FIDUCIARY DUTY OF OFFICERS OF LABOR ORGANIZATIONS

The third claim is the only one asserted against individual defendants Hoffa and Finn, and it is dismissed under Rule 8 and Rule 12(b)(6).  The claim is entirely too vague to give the notice required under Rule 8.  It alludes to the defendants' "fiduciary duty as defined by their respective constitution and bylaws," but does not specify where those laws might be found or what they say.  FAC ¶ 271.  The individual defendants are alleged to have failed to "enforce all agreements," but the claim allegations are again silent on what those agreements are.  Hoffa and Finn are further alleged to have failed to enforce their unspecified "internal constitution and bylaws for the benefit of the UAL Mechanic Class."  *Id*. ¶ 272.  Not only that, the rest of the FAC -- containing plaintiffs' factual allegations -- barely mentions Hoffa or Finn at all.  Plaintiffs' allegations simply do not adequately state a claim against these defendants, and this claim is consequently dismissed.

### IV.  COUNT IV, V & VI:  ERISA CLAIMS

Plaintiffs' fourth, fifth and sixth claims invoke the Employee Retirement Income Security Act ("ERISA"), but all three claims ultimately turn on CBA interpretations.  *See* FAC ¶ 279 ("LOA mandated UAL mechanics were eligible to be covered by CARP"); ¶ 286 (alleging defendants breached their duty of loyalty under ERISA by "failing to cover the UAL mechanics [under CARP] on the LOA Effective Date"); ¶ 291 (defendants conspired to violate UAL and UCH's fiduciary duties "by preventing plaintiffs from becoming participants in CARP on the LOA Effective Date.").  Resolution of these ERISA claims would first require determining whether and when plaintiffs were eligible to enroll in CARP pursuant to LOA 05-03M.

In this circumstance, Railway Labor Act-mandated boards are the "mandatory, exclusive, and comprehensive system" for resolving disputes "growing . . . out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."  *Long v. Flying Tiger Line, Inc. Fixed Pension Plan for Pilots*, 994 F.2d 692, 693-94 (9th Cir. 1993); *see also id*. at 695 ("Congress's enactment of ERISA, which opened the federal courts to suits over the

interpretation of pension plans, did not modify the exclusivity of this pattern of the Railway Labor Act."). The three ERISA claims are consequently dismissed.

## CONCLUSION

All claims are dismissed, except for plaintiffs' DFR claim against the union based on LOA 05-03M and the 2016-2022 CBA bargaining process, as described above. Plaintiffs may amend to try to fix the deficiencies identified by the Court by May 15, 2020. If this deadline is not feasible in light of the current public health situation, the parties may agree on a new date by joint stipulation filed with the Court. If the parties cannot agree, plaintiffs may ask the Court to extend the deadline.

No new claims or defendants may be added without prior leave of Court. Plaintiff Beier must be removed from any amended complaint. Defendant "Teamsters SFO Local 856/986" should also be removed based on plaintiffs' lack of opposition to defendants' argument that only IBT is a properly named defendant for the DFR claim. *See Vaca v. Sipes*, 386 U.S. 171, 177, 182 (1967) (duty of fair representation imposed only on labor organization which has been designated as the "exclusive collective bargaining representative" of a unit of employees); *see also Dycus v. NLRB*, 615 F.2d 820, 827 (9th Cir. 1980).

Any further amended complaint would be plaintiffs' third attempt. Plaintiffs are advised that they are not likely to be given any further opportunities to amend.

**IT IS SO ORDERED.**

Dated: April 21, 2020

JAMES DONATO
United States District Judge