UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN E. BYBEE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.,<br><br>    Defendants. | Case No. 18-cv-06632-JD<br><br>**ORDER RE MOTIONS TO DISMISS SECOND AMENDED COMPLAINT** |

This is an action brought by United Airlines mechanics against their union, individual union officers, and United Airlines and certain related entities. The Court previously granted in part defendants' motions to dismiss plaintiffs' first amended complaint, and gave plaintiffs leave to amend. Dkt. No. 73.

Since then, the parties have engaged in substantial filing excesses that have impeded the fair and efficient administration of this litigation. Plaintiffs filed a second amended complaint consisting of 619 paragraphs and 111 pages of allegations, 10 legal claims, and 25 separate items of proposed relief. Dkt. No. 86 (SAC). Defendants filed three separate motions to dismiss, Dkt. Nos. 96, 97, 98, and did not coordinate their briefing in any way, despite the overlapping nature of many of the union defendants' and United defendants' dismissal arguments. *See* Dkt. Nos. 97, 98. This doubled the amount of briefing for many arguments, and imposed on the Court the unnecessary burden of having to compare and cross-reference the parties' respective briefs.

All of this made the resolution of the pending motions more challenging than necessary. The parties' familiarity with the record is presumed, and the case is dismissed.

**DISCUSSION**

**I. DEFENDANTS STRIPLING'S AND MIRANDA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

New defendants Paul Stripling and George Miranda seek dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. No. 96. The SAC alleges that Stripling "is the principal officer of Local 781, located in Chicago, Illinois, the affiliated local plaintiff Dill is a member of." SAC ¶ 39. Miranda is alleged to be the "principal officer of Local 210, the affiliated local plaintiff Drumheller is a member of," and to "maintain[] an office in New York, New York to carry out his representational duties." *Id*. ¶ 40. Stripling and Miranda state that they are "principal officers of Local Union affiliates of the International Brotherhood of Teamsters located in Illinois and New York respectively," and that they "do not have sufficient minimum contacts with the state of California for this Court to exercise personal jurisdiction over them." Dkt. No. 96 at 3.

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the Court has not called for an evidentiary hearing, the plaintiff "need only make a prima facie showing" of personal jurisdiction. *Id*. Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Boschetto*, 539 F.3d at 1015. The Court may not, however, "assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation omitted).

Personal jurisdiction can be general or specific. *Zithromia Ltd. v. Gazeus Negocios de Internet SA*, No. 3:17-cv-06475-JD, 2018 WL 6340875, at *2 (N.D. Cal. Dec. 5, 2018) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). Plaintiffs here allege specific jurisdiction only. Dkt. No. 104 at 6 ("Plaintiffs concede general jurisdiction is inapplicable; however, specific jurisdiction is permitted"). To be subject to specific personal

jurisdiction, "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. To establish purposeful direction, the defendant must "allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. at 803 (quotations omitted).

Plaintiffs say that the federal statutes they have sued under provide for personal jurisdiction so long as defendants have "sufficient contacts with the United States." Dkt. No. 104 at 5. Stripling and Miranda did not argue otherwise, or even respond in any way, *see* Dkt. No. 134, which settles the point against them.

Plaintiffs also say that personal jurisdiction exists even under California's long-arm statute, which is co-extensive with the limits of the Constitution's due process clause, because Miranda and Stripling "directed activities in and to California." Dkt. No. 104 at 6. Specifically, plaintiffs state -- with citations to the SAC and declarations submitted in support of plaintiffs' opposition -- that Miranda directed the resolution of Drumheller's grievance in San Francisco, while Stripling did the same for plaintiff Dill's grievance. *Id*. at 3-4. In response, defendants argue only that there are "no such allegation[s] in the SAC," Dkt. No. 134 at 2-3, effectively conceding that the substance of plaintiffs' arguments could be enough to support personal jurisdiction over Stripling and Miranda. Defendants also say that "[n]one of the grievances were 'handled' in California. The grievances were reviewed by the IBT in Washington, D.C." *Id*. at 3. But this is of no moment because at this procedural stage, "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800; *Boschetto*, 539 F.3d at 1015; *see also Mavrix Photo*, 647 F.3d at 1223 ("we resolve factual disputes in the plaintiff's favor").

On this record, plaintiffs have sufficiently made a prima facie showing of personal jurisdiction, and the Court consequently denies Stripling's and Miranda's Rule 12(b)(2) motion for dismissal. Plaintiffs' motion for jurisdictional discovery, Dkt. No. 105, is terminated as moot.

## II. UNION DEFENDANTS' AND UNITED DEFENDANTS' MOTIONS TO DISMISS

### A. Counts I & II: Breach of Contract and Breach of Duty of Fair Representation Claims

As discussed, the SAC is not easy to follow. Plaintiffs' opposition briefs contained a much more concise statement of facts, which was basically the same for plaintiffs' respective oppositions to the union defendants' and United defendants' motions to dismiss. *See* Dkt. No. 103 at 1-2; Dkt. No. 102 at 1-2. As clarified by these statements, the gravamen of plaintiffs' claims appears to be that: (1) the union defendants failed to safeguard plaintiffs' and other union members' rights under LOA 05-03M (by, for example, not providing the membership with a pension election vote once United began maintaining the Continental Airlines Retirement Plan (CARP) in October 2010); (2) the union defendants mishandled and wrongfully refused to support plaintiffs' grievances on this issue; (3) when plaintiffs "then turned to United to complete the grievance process," United refused to be of help. Based on these facts, plaintiffs brought suit for breach of contract against their employer (Count I), and for breach of the duty of fair representation by the union (Count II).

Counts I and II are dismissed. "Airlines are governed by the Railway Labor Act," *Bautista v. Pan American World Airlines, Inc.*, 828 F.2d 546, 549 n.2 (9th Cir. 1987), and the RLA "endeavors to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Beckington v. American Airlines, Inc.*, 926 F.3d 595, 598 (9th Cir. 2019) (quotations and citation omitted). A "fundamental component of the RLA's design is the right of employees 'to organize and bargain collectively through representatives of their own choosing'"; "[o]nce a union is chosen by a majority of the employees in a bargaining unit, the union's bargaining power is 'exclusive.'" *Id*. at 599 (citations omitted). The flip side of this exclusive bargaining authority is that the union has "a correlative duty inseparable from the power of representation to represent fairly the interests of *all* bargaining-unit members during the

4

1    negotiation, administration, and enforcement of collective-bargaining agreements." *Id*. at 600
2    (quotations and citations omitted; emphasis in original).  This is the union's duty of fair
3    representation (DFR), and the "Supreme Court has . . . held that employees have a 'judicially
4    implied' cause of action under the RLA against their union for breaching its duty of fair
5    representation." *Id*. (quoting *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979)).  "The
6    duty of fair representation extends to a union's conduct in negotiating collective bargaining
7    agreements as well as in pursuing grievances on behalf of individual employees," and a union
8    "breaches its duty when its conduct is 'arbitrary, discriminatory, or in bad faith.'" *Bautista*, 828
9    F.2d at 549 (citations omitted).

10   In a "hybrid" suit brought against an employee's employer and union, *Kelly v. Burlington
11   Northern Railroad Co.*, 896 F.2d 1194, 1195 (9th Cir. 1990), the employee's claims against the
12   employer and the union are "inextricably interdependent." *DelCostello v. Int'l Brotherhood of
13   Teamsters*, 462 U.S. 151, 164 (1983).  To the extent the breach of CBA claim is not "inextricably
14   interdependent" with the DFR claim, the Court would lack jurisdiction to hear it.  *See Debeikes v.
15   Hawaiian Airlines, Inc.*, No. 13-00504 ACK-RLP, 2015 WL 12781641, at *8 n.15 (D. Haw. Feb.
16   17, 2015), *aff'd*, 725 F. App'x. 499 (9th Cir. 2018) (unpublished).  Hybrid suits brought under the
17   RLA are subject to a six-month limitations period, *Kelly*, 896 F.2d at 1197, and in such a case, the
18   Court "must first examine the claim against the union." *Bautista*, 828 F.2d at 551-52.

19   Plaintiffs have alleged that the union breached its duty of fair representation both at the
20   negotiating table and in its handling of member grievances. *See Bautista*, 828 F.2d at 549.  But it
21   is clear that both types of allegations are time-barred under the applicable 6-month statute of
22   limitations.  *Kelly*, 896 F.2d at 1197.  For the union's alleged failure to safeguard its members'
23   rights under LOA 05-03M, plaintiffs clearly state that they "learned of the abandonment of LOA
24   05-03M when a joint agreement proposal was revealed in August 2016." Dkt. No. 103 at 2.  For
25   plaintiffs' grievance-related DFR claims, the Court previously found that plaintiffs' allegations in
26   this regard "do not plausibly state a DFR claim." Dkt. No. 73 at 5-6.  That conclusion still holds,
27   and those claims are also time-barred, as plaintiffs acknowledge that "[t]he earliest plaintiffs
28   learned of the [grievance-related] fiduciary [*sic*] breaches was March 31, 2017, through the

United States District Court
Northern District of California

1  Gleason memo." Dkt. No. 103 at 3. Plaintiffs did not file this suit until October 31, 2018. Dkt.
2  No. 1. That is well past the six-month mark after August 2016 (for the alleged breach of DFR at
3  the bargaining table) as well as March 2017 (for the alleged breach of DFR in the handling of
4  member grievances). Although plaintiffs mention the longer "ERISA limitations period," Dkt.
5  No. 103 at 3, our circuit held clearly in *Kelly*, 896 F.2d at 1197, that "the six-month limitations
6  period in § 10(b) [of the Labor Management Relations Act, 29 U.S.C. § 160(b)] . . . also governs
7  hybrid suits brought under the RLA." Plaintiffs' other timeliness arguments, Dkt. No. 103 at 3-5,
8  are without merit, and point to the conclusion that plaintiffs' DFR claims are time-barred, in
9  addition to the grievance-related DFR claim lacking merit for the reasons previously discussed,
10 Dkt. No. 73 at 5-6.

11  Plaintiffs' breach of contract claim against United is dismissed for multiple reasons. A
12 good argument can be made that the dismissal of the DFR claim against the union in itself
13 warrants dismissal of the contract claim against United. In *Bautista*, 828 F.2d at 551-52, the
14 circuit held that in hybrid suits like this one, if the "employee does not have a triable claim against
15 the union, then all that is left is his claim against the employer," and "[i]n that event, *Glover* does
16 not apply and the RLA requires that the claim be heard before the Adjustment Board." Additional
17 reasons support dismissal. To the extent plaintiffs suggest United "colluded" with the union in its
18 breach of the duty of fair representation, *see* Dkt. No. 102 at 6, such a claim is not cognizable. *See*
19 *Beckington*, 926 F.3d at 604 ("Nothing in the RLA's text or framework supports an expansion of
20 that [DFR] doctrine to impose liability on an employer solely for its 'collusion' in a union's
21 breach of duty."). For plaintiffs' claims that United independently engaged in breaches of "the
22 operative collective bargaining agreement," SAC ¶ 454, the Court previously found that these
23 claims "seek 'purely to vindicate a right or duty created by the CBA itself' and . . . 'require
24 construing the collective bargaining agreement,'" and are consequently "preempted by the
25 Railway Labor Act (RLA), 45 U.S.C. §§ 151 et seq." Dkt. No. 73 at 6-7 (citing *Alaska Airlines*
26 *Inc. v. Schurke*, 898 F.3d 904, 920-21 (9th Cir. 2018)). That conclusion holds. Plaintiffs' SAC
27 continues to lack plausible, non-conclusory allegations that plaintiffs' "employer and their union
28 'acted in concert to discriminate against them, such that arbitration before a panel of employer and

1  union representatives would be absolutely futile.'"  Dkt. No. 73 at 6 (quoting *Beckington*, 926
2  F.3d at 606-07).

### B.     Count III: Violation of Statutory Due Process (RLA § 184)

Plaintiffs' third cause of action alleges that RLA § 184 "imposes a duty to not only create the specialized boards of adjustment but also a duty to permit access and a role in the grievance process for all parties, including represented employees."  SAC ¶ 514.

Count III is dismissed.  To the extent plaintiffs are again challenging the union's failure to support plaintiffs' grievances, that is a repeat of their DFR claim, and it fails for the same reasons discussed above.  *See* Dkt. No. 103 at 10-11 (responding to defendants' arguments by saying, "[t]his would amount to a breach of the duty of fair representation," and "this is [breach] of [the union's] duty of fair representation") (quotations omitted).

In addition, in the absence of controlling authority that is on point, the Court declines plaintiffs' request to "imply a private right of action" against the union and United to enforce plaintiffs' alleged right under RLA § 184 to proceed to arbitration over the union's objections.  *See* Dkt. No. 103 at 10; Dkt. No. 102 at 8.

### C.     Count IV: Violation of Fiduciary Duty (LMRDA § 501)

This claim is alleged against individual union officers Hoffa, Finn, Griswold, Stripling, and Miranda for breach of fiduciary duty under LMRDA § 501, 29 U.S.C. § 501.  SAC ¶¶ 523-24.  For this claim, plaintiffs essentially re-allege the union's alleged failures to honor its DFR, and attempt to hang liability for these failures on the individual union officers.  *See*, *e.g.*, *id*. ¶ 528 (individual union officer defendants breached their fiduciary duties "[b]y failing to take steps to put an end to the self-dealing involved over healthcare benefits and pension participation, [and] by the continued disregard for the rank and file[']s rights and best interests"); ¶ 529 (individual union officer defendants "unreasonably fail[ed] to enforce all agreements entered into between the employer and their members"); ¶ 536 ("Hoffa and the principal officer defendants permitted United to strip plaintiffs of their rights under LOA 05-03M").  But it is settled law that union officers cannot be held personally liable for union actions, and "[w]here the union has inflicted the injury it alone must pay."  *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 249 (1962); *see also*

*Peterson v. Kennedy*, 771 F.2d 1244, 1257 (9th Cir. 1985) (noting with approval other courts that "have read *Atkinson* to prohibit claims, both state and federal, tort and otherwise, against individuals who are employees of or acting as agents or representatives of their unions").

The Court previously dismissed the claims against defendant Hoffa because they were too vague to pass muster under Rule 8 and Rule 12(b)(6). Dkt. No. 73 at 7. Plaintiffs have added allegations that specifically name Hoffa, but they remain deficient. They allege, for example, that "Hoffa allowed the national office to receive things of value from United, including but not limited to payments of $1.5M on June 6, 2020, exactly six months and one day after the ratification of the joint agreement and in light of preventing any additional grievances to be filed regarding bargaining, negotiating, or enforcing of contracts, these payments by United were intended to and directly benefitted the Teamsters and their officials and employees instead of the represented employees/rank and file." SAC ¶ 533. While allegations like these have a veneer of specificity (by, for example, mentioning the specific date and amount of a payment), the substance of what plaintiffs are trying to allege (that the payment was improper and that Hoffa breached his legal duties by "allow[ing] the national office to receive" it) relies on unwarranted deductions of fact and unreasonable inferences, which the Court need not accept. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Plaintiffs' allegations do not allow the Court to "draw the reasonable inference that the [individual union] defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Count III is dismissed.

**D.     Counts V, VI, VII, VIII, IX, and X: ERISA Claims**

Counts V, VI, VII, VIII, IX, and X are dismissed. Plaintiffs have again alleged a slew of Employee Retirement Income Security Act (ERISA) claims against various defendants. These claims are peripheral at best to plaintiffs' main case, and the allegations for them underscore that plaintiffs' real complaint is that they were not enrolled in CARP as of October 1, 2010, *see*, *e.g.*, SAC ¶ 581, which is the same issue at the heart of plaintiffs' DFR claim against the union. In any event, the ERISA claims fail for the same reason they were previously dismissed: they ultimately

1    turn on CBA interpretations, in which case the RLA-mandated boards are the exclusive system for
2    dispute resolution. Dkt. No. 73 at 7-8 (citing *Long v. Flying Tiger Line, Inc. Fixed Pension Plan*
3    *for Pilots*, 994 F.2d 692, 693-94 (9th Cir. 1993)).

4        The SAC again expressly alleges that "LOA 05-03M mandated plaintiffs and the class
5    were eligible to be covered by CARP" as of October 1, 2010, ¶ 616, making clear that plaintiffs'
6    eligibility for enrollment in CARP is a matter of CBA interpretation. Although couched in ERISA
7    terms, each of Counts V through X ultimately take issue with plaintiffs' failure to be enrolled in
8    CARP as of October 2010. For example, Count V challenges the administrative committee
9    defendants' "failure to conduct [an] adequate investigation into if plaintiffs and the class should be
10   participants in CARP." SAC ¶ 555. Count VI asserts that the administrative committee
11   defendants allowed "parties in interest to dictate who would participate in CARP." *Id*. ¶ 566.
12   Count VII alleges that United and UAH breached their fiduciary duties under ERISA by
13   "refus[ing] to accept plaintiffs and the class as having met the definition of plan participant under
14   the definitions provided in CARP as of October 1, 2010," and "by failing to cover plaintiffs and
15   the class on October 1, 2010." *Id*. ¶ 581. Count VIII alleges that the "union defendants conspired
16   with the United defendants to violate the latter's fiduciary duties by preventing the plaintiffs and
17   the class from becoming participants in CARP on or about October 1, 2010." *Id*. ¶ 594. Count IX
18   vaguely asserts that United, UAH, and the administrative committee defendants failed to take
19   steps "as were necessary to ensure that participants' interests were loyally and prudently served."
20   *Id*. ¶ 606. And Count X squarely asserts that "ERISA's coverage requirements were violated
21   because sUA mechanics were improperly excluded from CARP." *Id*. ¶ 614.

22       These allegations all rest on plaintiffs' assertion that they should have been enrolled in
23   CARP as of October 2010, and that is an issue that cannot be determined without looking to the
24   parties' collective bargaining agreement. Plaintiffs' argument that their "ERISA claims are
25   independent of the collective bargaining agreement," Dkt. No. 103 at 14, simply is not accurate.
26   Instead, the claims are deficient for the exact same reasons as the Court noted in its prior motion to
27   dismiss order. Dkt. No. 73 at 7-8.

28

**CONCLUSION**

The SAC is dismissed. The Court declines to grant further leave to amend. In its last order, the Court advised plaintiffs that they were "not likely to be given any further opportunities to amend." Dkt. No. 73 at 8. And although plaintiffs were not permitted to add any new claims or defendants without leave, when plaintiffs requested leave to add defendants and a new claim, the Court granted it over the objection of defendants. Dkt. No. 85. The result was a meandering second amended complaint that largely repeated the shortcomings of the first amended complaint. The Court's discretion to deny further amendment is particularly broad where, as here, the Court has already granted plaintiff leave to amend. *Chodos v. West Publishing Co., Inc.*, 292 F.3d 992, 1003 (9th Cir. 2002).

Plaintiffs' discovery dispute letter, Dkt. No. 137, is terminated as moot. The SAC is dismissed with prejudice, and judgment will be entered for defendants.

**IT IS SO ORDERED.**

Dated: August 1, 2022

JAMES DONATO
United States District Judge